IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEROME BOYD BERRYHILL, an individual citizen,

                Plaintiff,

      v.

BONNEVILLE POWER ADMINISTRATION, a United States agency,

                Defendant.

Case No. 3:19-cv-02001-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

        Plaintiff Jerome Berryhill ("Berryhill") brings this action against the Bonneville Power Administration ("BPA") seeking disclosure of records related to Berryhill's property under the Freedom of Information Act ("FOIA"). Berryhill alleges violations of FOIA and the Administrative Procedure Act ("APA"). Now before the Court is BPA's motion for summary judgment. All parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For the reasons set forth below, the Court grants BPA's motion for summary judgment (ECF No. 15).

///

PAGE 1 – OPINION AND ORDER

**BACKGROUND**

This case arises from a dispute involving a BPA easement on Berryhill's property (the "Property"). Two sets of 115-volt transmission wires cross over the Property in a north-south direction. (Decl. of Jerome Berryhill ("Berryhill Decl.") at 2, ECF No. 18.) Under the terms of the easement, BPA is authorized to perform maintenance on the Property to prevent vegetation and other objects from encountering the transmission lines that pass overhead. (Decl. of FOIA Officer Candace Palen ("Palen Decl.") ¶¶ 25-26, ECF No. 16.)

On July 9, 2018, Berryhill received an e-mail from BPA Natural Resource Specialist Carlos Mora Flores ("Mora"), which stated that the vegetation on the Property had grown too tall and posed a safety risk to Berryhill and his family. (Berryhill Decl. at 2.) On August 2, 2018, Mora met Berryhill at the Property to discuss trimming the trees and vegetation located on the easement. (*Id.* at 2.) During the meeting, Berryhill claimed that Mora's map of the easement was incorrect, and that some of the areas Mora proposed to trim were not located within the boundaries of the easement. (*Id.* at 4.) To resolve this dispute, Mora arranged for a survey to mark the boundaries of the easement. (*Id.*) BPA Realty Specialist Sandra Billings ("Billings") contacted Berryhill to schedule a survey appointment. (*Id.*) Five months later, the survey was performed, and the easement boundaries were permanently marked on the Property. (*Id.*)

On January 22, 2019, Billings, Mora, and Berryhill met at the Property to discuss maintenance of the vegetation. (*Id.*) Through the course of the meeting, Berryhill and Mora disagreed as to which plants required removal and the allowable clearance heights pursuant to BPA's vegetation plan. (*Id.*) Eventually, Berryhill indicated that the conversation was over and asked Mora and Billings to leave. (*Id.*)

On January 28, 2019, Billings offered to draft a vegetation agreement, the terms of which would provide that if vegetation on Berryhill's property grows outside of the agreed upon heights

PAGE 2 – OPINION AND ORDER

of six and eight feet in designated areas on the easement, BPA would provide Berryhill with twenty-four hours' notice before removing any vegetation in violation of the height agreement. (*Id.*) Berryhill responded to Billings' e-mail and indicated that he did not believe the parties had arrived at an agreement and that he was not prepared to sign the vegetation agreement. (*Id.* at 6.) On February 14, 2019, Berryhill received a certified letter from BPA informing him that, due to his rejection of BPA's offer, BPA would be scheduling a vegetation management crew to remove vegetation in accordance with BPA's easement rights. (*Id.*) On February 19, 2019, BPA hired a contractor and removed the trees and vegetation from the easement. (*Id.*; Decl. of Ann Witte ("Witte Decl.") at 1, ECF No. 18-2.)

On March 15, 2019, Berryhill submitted a FOIA request to BPA, seeking "all BPA records pertaining to [the Property's address]." (Palen Decl. Ex. 2, at 1.) On August 7, 2019, BPA produced 453 pages of records responsive to Berryhill's request, twenty-eight of which contained redactions. (Palen Decl. ¶ 16.) Later, BPA determined that six of the twenty-eight redacted pages were duplicative. (*Id.*)

Dissatisfied with the results of his request, Berryhill filed an administrative appeal with the Department of Energy's ("DOE") Office of Hearings and Appeals on November 4, 2019. (Palen Decl. Ex. 3, at 1.) On November 21, 2019, the DOE denied the appeal, stating that the decision was "a final order of the Department of Energy for which any aggrieved party may seek judicial review pursuant to 5 U.S.C. § 552(a)(4)(B)." (Palen Decl. Ex. 3, at 4.) The DOE concluded that BPA properly withheld the redacted information under Exemption 5 of FOIA ("Exemption 5"). (Palen Decl. Ex. 3, at 4.) Specifically, the DOE found that BPA properly withheld the redacted emails and draft letters under both the attorney-client privilege and the deliberative process privilege. (*See* Palen Decl. Ex. 3, at 4, noting that "the legal advice provided

by BPA attorneys is also deliberative and predecisional, as it is part of the back and forth discussion that would eventually lead to a decision by BPA").

On December 12, 2019, Berryhill filed this action seeking full disclosure of the requested documents, alleging that BPA's failure to release the redacted portions of the twenty-eight responsive records violates FOIA. (Compl. ¶ 22.) Berryhill also seeks relief under the APA, alleging that BPA "acted arbitrarily, capriciously, and unlawfully abused its discretion" by withholding records responsive to his request. (Compl. ¶¶ 23-24.)

On September 2, 2020, BPA released seven of the original twenty-eight redacted pages to Berryhill in full. (Palen Decl. ¶ 17; Witte Decl. at 3.) The seven pages consisted of drafts of a letter that BPA eventually sent to Berryhill. (Palen Decl. at ¶ 17; Witte Decl. at 3.)

On September 4, 2020, BPA filed a motion for summary judgment. (ECF No. 15.) BPA asserts that it is not required to disclose the redacted documents because they are protected from disclosure under Exemption 5. (Def.'s Mot. Summ. J. at 6.) With its motion, BPA filed a *Vaughn* index,[1] which includes fifteen documents. (Palen Decl. Ex. 1 ("*Vaughn* Index"), ECF No. 16-1.) The *Vaughn* index provides a description of each page containing redactions, the asserted exemption that justifies its withholding, and an explanation as to why BPA withheld the information. In addition, the *Vaughn* index identifies five duplicate documents (Bates numbers 000024, 000053, 000072, 000073, and 000074) that contain identical redactions to other documents listed in the index. (*See Vaughn* Index.)

On September 22, 2020, Berryhill filed his opposition to BPA's summary judgment motion. (Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n").) In his opposition, Berryhill

---

[1] A *Vaughn* Index identifies the records in question and explains the reasons for withholding. *See Harvey's Wagon Wheel, Inc. v. NLRB*, 550 F.2d 1130, 1141 (9th Cir. 1976); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-828 (D.C. Cir. 1973).

asserts that: (1) he was unable to locate the six duplicate documents that BPA claims it identified

from the original production, (2) four redacted documents were omitted from the *Vaughn* index

and therefore BPA is not entitled to judgment as a matter of law with respect to those documents,

and (3) malfeasance on the part of Flores and Billings deprives BPA of any protections under

FOIA's deliberative process privilege. (*Id.* at 4-16.)

On November 9, 2020, BPA submitted ninety-eight pages to the Court for *in camera*

review, numbered BPA-000001 to BPA-000098. On December 2, 2020, Berryhill requested a

discovery hearing to determine whether BPA had provided the Court with five documents that

BPA claimed were duplicative of other records released to Berryhill as part of his original FOIA

request. The Court reviewed the five documents and determined that they were in fact

duplicative of five documents that BPA had already provided to the Court for *in camera*

inspection.[2]

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    The Freedom of Information Act (FOIA)

"FOIA was enacted to facilitate public access to Government documents." *Lahr v. Nat'l

Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502

U.S. 164, 173 (1991)). FOIA provides public access to official information "'shielded

---

[2] The documents Berryhill provided bearing the original Bates numbers 377, 378, 379, 380, and 381, correspond to the documents BPA provided for *in camera* review with the updated Bates numbers 000051, 000052, 000053, 000054, 000055, and 000056. At the discovery hearing, Berryhill's counsel correctly noted that the time stamp appearing on an e-mail contained in document number 377 does not appear on any other documents. After careful review, the Court finds that document 377 corresponds with document 000051 and part of document 000052, however, the time stamp reflected on document number 377 reads "15:55:45," whereas the timestamp appearing on document number 000051 reads "3:56 p.m." Despite this slight discrepancy, the documents include the identical content from the same e-mail chain.

unnecessarily' from public view and establishes a 'judicially enforceable public right to secure such information from possibly unwilling official hands.'" *Id.* at 973 (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). To prevent disclosure of a limited class of sensitive government documents, FOIA contains nine statutory exemptions. *See* 5 U.S.C. § 552(b)(1)-(9). "Because FOIA is meant to promote disclosure, its exemptions are interpreted narrowly." *Sierra Club, Inc. v. U.S. Fish & Wildlife Serv.*, 925 F.3d 1000, 1011 (9th Cir. 2019).

### B.    Summary Judgment in FOIA Cases

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(a). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "Unlike the typical summary judgment analysis, in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute." *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 800 (1996). Instead, the courts conduct a two-step inquiry.

"First, the court must determine whether the agency has met its burden of proving that it fully discharged its obligations under FOIA." *KXTV, LLC v. U.S. Citizenship & Immigr. Servs.*, No. 2:19-cv-00415-JAM-CKD, 2020 WL 1082779, at *4 (E.D. Cal. Mar. 6, 2020) (citing *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). An agency can establish this by demonstrating "that it conducted a search reasonably calculated to uncover all relevant documents." *Id.* If the agency meets its initial burden, the second step of the inquiry "examines whether the agency has proven that the withheld information falls within one of the nine FOIA exemptions." *Id.* (citing *Ray*, 502 U.S. at 173). Thus, to prevail on summary judgment, an agency must show that it has adequately searched for documents and that any withheld material falls within an exemption.

## II.    ANALYSIS

Berryhill challenges BPA's withholding of redacted material from fifteen documents responsive to his FOIA request. BPA claims that it is justified in withholding the redacted portions of the documents pursuant to FOIA's Exemption 5. *See* 5 U.S.C. § 552(b)(5). As explained below, the Court concludes that BPA properly withheld the material and therefore grants BPA's motion for summary judgment.

### A.    Adequacy of Search

"FOIA requires an agency responding to a request to 'demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Lahr*, 569 F.3d at 986 (quoting *Zemansky*, 767 F.2d at 571). An agency can demonstrate the adequacy of its search through "reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (citation omitted).

BPA seeks summary judgment on the issue of whether it conducted a search reasonably calculated to find the records responsive to Berryhill's FOIA request. (Def.'s Mot. Summ. J. at 11.) Berryhill does not challenge BPA's search. Further, BPA provides a declaration from Candice Palen, BPA's FOIA Officer, that details BPA's search for records and establishes that the search was sufficiently thorough. (Palen Decl. ¶¶ 9-18.) Accordingly, BPA is entitled to judgment on the adequacy of its search. *See KXTV*, 2020 WL 1082779, at *4 (granting summary judgment on the same issue when the plaintiff did not challenge the defendant's search and the defendant provided a detailed declaration describing its search).

### B.    Exemption 5

Berryhill challenges BPA's withholding of documents that BPA claims are shielded from disclosure under Exemption 5. Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 protection includes the

PAGE 7 – OPINION AND ORDER

deliberative process privilege, the attorney-client privilege, and the attorney work-product doctrine. *See Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997). BPA asserts that it properly applied Exemption 5 to protect information subject to the deliberative process and attorney-client privileges.

### 1.    Documents at Issue

As a preliminary matter, and after careful review of the ninety-eight documents that BPA submitted for *in camera* inspection, the Court confirms that the following records containing redactions are duplicative: (1) the redacted portion from Bates number 000024 is the identical portion redacted from Bates numbers 000003 and 000004; (2) the redacted portion from Bates number 000025 appears unredacted on Bates number 000004; (3) the redacted portion that appears on Bates number 000055 appears unredacted on Bates numbers 000033 and 000076; (4) the redacted portion that appears on Bates numbers 000053 and 000074 is identical to the redacted portion on Bates number 000031; and (5) the redacted portions on Bates numbers 000072 and 000073 are identical to the redacted portion that appears on Bates number 000052. In total, seven of the fifteen redacted documents included in the *Vaughn* index (Bates numbers 000024, 000025, 000053, 000055, 000072, 000073, and 000074) are either duplicative or were previously released in full to Berryhill as part of BPA's original production of records. Accordingly, the Court limits its discussion only to the eight unique documents that contain redactions.[3]

///

///

---

[3] The eight unique documents are listed as Bates numbers 000003, 000004, 000011, 000017, 000019, 000020, 000031, and 000052.

### 2.    The Deliberative Process Privilege

#### a.    Applicable Law

The deliberative process privilege "shields certain intra-agency communications from disclosure to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Lahr*, 569 F.3d at 979. In other words, agencies are allowed to withhold documents that reflect "the decision making processes of government agencies." *Sears*, 421 U.S. at 150 (citation omitted).

To qualify under the deliberative process privilege, information must be both "predecisional" and "deliberative." *Lahr*, 569 F.3d at 979. A document is predecisional if it is "prepared in order to assist an agency decision-maker in arriving at his decision." *Sierra Club*, 925 F.3d at 1012 (quoting *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992)). This may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* A document is deliberative if it reflects the "give-and-take of the consultative process" and includes material that would "inaccurately reflect or prematurely disclose the views of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The key inquiry is "whether the disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Assembly of State of Cal.*, 968 F.2d at 921.

#### b.    Analysis

BPA asserts the deliberative process privilege as a basis for withholding documents bearing Bates numbers 000003, 000004, 000011, 000017, 000019, 000020, and 000031. After an *in camera* review of the documents, the Court finds that the redacted portions of each e-mail are

protected from disclosure under the deliberative process privilege. The Court will discuss each document in turn.

The records bearing Bates numbers 000003 and 000004 contain redactions from a single e-mail sent by BPA attorney Annette Talbott ("Talbott") to four other BPA employees. BPA's *Vaughn* index describes these documents as including "(1) questions posed that will shape future legal advice, and (2) advice on discussing the matter with the landowner Mr. Berryhill." (*Vaughn Index at 1*.) An *in camera* inspection reveals that the e-mail was prepared for the specific purpose of assisting the agency in its decision to remove vegetation from BPA's easement, and therefore the record is predecisional. The e-mail is also deliberative. It exposes the thought processes of a BPA employee, discusses how the agency plans to move forward with vegetation removal, and it contains advice on how BPA staff should proceed. Accordingly, these documents are appropriately considered part of the deliberative process.

The deliberative process privilege also applies to Bates numbers 000017, 000019, and 000020. These emails were prepared to assist BPA staff on its plan for vegetation removal at the Property. The redacted portions of the e-mails contain questions concerning the vegetation removal plan and request clarification on pending issues before the agency. In addition, some of the redacted material reflects the personal opinions of BPA employees rather than the policy of the agency. *See Coastal States*, 617 F.2d at 866 (holding that the deliberative process privilege covers "subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"). These documents represent the give-and-take of the agency's internal deliberations, and their disclosure would discourage such deliberations. As such, the documents are both predecisional and deliberative, and thus fall within the deliberative process privilege.

///

In addition, BPA seeks to withhold an e-mail sent from a BPA employee on January 23, 2019, described as Bates number 000011. The *Vaughn* index describes this document as a recommendation from a BPA employee "on how to proceed with a contentious vegetation management problem." (*Vaughn* Index at 3.) After reviewing the withheld portions of the record, the Court concludes that the document is both predecisional and deliberative. The contents of the email indicate that it was created before the agency made a final decision on how to proceed with the vegetation removal. Furthermore, the e-mail contains comments and suggestions from agency staff on how to approach the situation and reveals the opinions and mental processes of a BPA employee. Thus, the redacted portion of the document is protected by the deliberative process exemption.

Finally, BPA withheld an e-mail that Billings sent on February 15, 2019 (Bates number 000031), four days before BPA removed vegetation from the Property. In its *Vaughn* index, BPA asserts that the redacted material includes "staff input on how to proceed with safely enforcing BPA's easement rights." (*Vaughn* Index at 6.) The Court finds that the e-mail is predecisional, as it contributes to the agency's process of arriving at a decision as to safety precautions in preparation for the vegetation removal. *See Riverkeeper v. U.S. Army Corps of Eng'rs*, 38 F. Supp. 3d 1207, 1219 (D. Or. 2014) (noting that a document is predecisional when it "contributes in some meaningful sense to the process of arriving at [] a decision"). In addition, the e-mail expresses subjective opinions and personal views of a BPA employee. As a result, the Court finds that the document is deliberative, and releasing this record would discourage the type of candid discussion necessary for effective formulation of agency decisions. *See Assembly of State of Cal.*, 968 F.2d at 920 (noting that the deliberative process privilege protects agencies from

having to "operate in a fishbowl") (citation omitted). Accordingly, BPA properly withheld the e-mail under Exemption 5.

Berryhill argues that the agency's malfeasance bars application of the deliberative process privilege here. (Pl.'s Opp'n at 7-15.) Berryhill alleges that Mora and Billings: (1) failed to provide BPA with truthful information; (2) exaggerated safety risks posed by vegetation on the Property; (3) falsified a two-year history of "trouble" and "issues" between BPA employees and Berryhill; (4) failed to follow legal advice; and (5) were dishonest in their communications with BPA. (Pl.'s Opp'n at 7-15.) Berryhill also claims that he received a coercive e-mail from Mora threatening to remove plants from the Property four months before the vegetation removal occurred and that this e-mail suggests bad faith on Mora's part. (Pl.'s Opp'n at 7-8.)

In FOIA cases, "where there is reason to believe the documents sought may shed light on government misconduct, the [deliberative process] privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *In Re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997). At the same time, "general allegations of misconduct are insufficient to overcome the deliberative process privilege because 'disproving the general, substantive allegations of misconduct is not the government's obligation in FOIA litigation.'" *Freedom of the Press Found. v. U.S. Dep't of Justice*, 241 F. Supp. 3d 986, 1001 (N.D. Cal. 2017) (quoting *Lahr*, 569 F.3d at 980).

Berryhill submits no evidence that Mora, Billings, or any other BPA employee engaged in misconduct here. Instead, Berryhill's allegations amount to speculation as to the motivations behind Mora and Billings' actions. For example, in a declaration provided by Berryhill, he states that "Mora was well aware of the reason I wanted to keep [the willows] tall" and that "it seemed

evident that he was upset about the results of the survey, and intended to punish me for interfering with his plans." (Berryhill Decl. at 5.) Berryhill also claims that "Billings and Mora must have been told not to write any factual report when they returned 'from the field,'" but provides no evidence that supports either claim. (Pl.'s Opp'n at 15.) In addition, Berryhill points to alleged miscalculations of vegetation clearance standards and claims that Mora failed properly to investigate safety risks on the Property according to the procedures prescribed by BPA's Vegetation Management Plan. (Pl.'s Opp'n at 8-14.) On their own, these allegations are insufficient to warrant disclosure of privileged information. Berryhill must produce more than just "unsubstantiated assertions of Government wrongdoing" to establish a meaningful evidentiary showing, and he has not done so here.[4] *Boyd v. Crim. Div. of the Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007). Accordingly, the malfeasance that Berryhill alleges, without any evidentiary support, does not deprive BPA of protection under the deliberative process privilege.

### c.    Conclusion

BPA has established that the redacted portions of the records are both predecisional and deliberative. Accordingly, BPA properly withheld these materials pursuant to the deliberative process privilege.

### 3.    Attorney-Client Privilege

BPA also invokes the attorney-client privilege to protect from disclosure the redacted material reflected in six documents. For the reasons that follow, the Court concludes that the attorney-client privilege protects the redacted material.

---

[4] Having reviewed the redacted portions of the records, the Court assures Berryhill that there is no evidence of vindictiveness or bad faith toward Berryhill reflected in these internal agency records.

### a.      Applicable Law

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). The privilege extends to all situations in which a client seeks an attorney's advice on a legal matter and protects not only the client's disclosures to an attorney, but also an attorney's written communications to a client "to ensure against inadvertent disclosure, either directly or by implication, of information which the client has previously confided to the attorney's trust." *Coastal States*, 617 F.2d at 862.

The Ninth Circuit applies an eight-part test to determine whether information is covered by the attorney-client privilege: "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at [the client's] insistence permanently protected (7) from disclosure by [the client] or by the legal adviser, (8) unless the protection is waived." *United States v. Ruele*, 583 F.3d 600, 607 (9th Cir. 2009). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

### b.      Analysis

According to the *Vaughn* index, BPA withheld portions of six documents bearing Bates numbers 000003, 000004, 000017, 000019, 000020, and 000052 pursuant to the attorney-client privilege. These records reflect an internal e-mail chain between BPA counsel and BPA employees. The Court will address each document in turn.

The first two documents (Bates numbers 00003 and 00004) contain redacted portions of a single e-mail sent by Talbott, as discussed above. The email includes several questions posed by Talbott to BPA employees. *In camera* inspection establishes that Talbott asked questions of the

employees for the purpose of formulating and providing legal advice regarding BPA's rights to its easement on the Property. These are attorney-client privileged communications and thus fall under Exemption 5.

With respect to the records bearing Bates numbers 000017, 000019, and 000020, also emails in a string between Talbott and BPA employees, the Court's *in camera* review establishes that documents number 000017 and 000019 include questions from Talbott to BPA employees for the purpose of formulating and providing legal advice regarding BPA's rights to its easement on the Property, as well as Talbott's legal advice on the same subject. As part of the same email string, document number 000020 includes Mora's disclosures to Talbott in response to her questions, to aid Talbott in formulating and providing legal advice with respect to the easement.

The last document that BPA withheld under the attorney-client privilege is a document bearing Bates number 000052. BPA describes this document as a "communication from BPA's attorney, including legal options for proceeding in the disputed matter" and "a confidential communication regarding BPA's exercise of its legal rights under the easement." (*Vaughn* Index at 6.) Inspection of this document confirms that the e-mail contains legal advice provided by Talbott to BPA employees regarding the easement and is therefore protected by the attorney-client privilege.

Berryhill argues that these documents do not constitute the type of advice that is traditionally protected by the attorney-client privilege and therefore the privilege does not apply. (Pl.'s Reply at 3-4.) Specifically, Berryhill claims that Talbott's advice is more akin to "straightforward explanations of agency regulations in specific factual situations." (Pl.'s Reply at

4.) As support, Berryhill cites to *Coastal States*, 617 F.2d 854,[5] but his reliance on this case is misplaced. The present case bears little resemblance to the situation encountered by the court in *Coastal States*. For example, the part of the *Coastal States* opinion relied upon by Berryhill addresses whether certain documents at issue qualify under the deliberative process privilege and not the attorney-client privilege, and thus it does not assist the Court in determining whether communications are protected by the attorney-client privilege. *Id.* at 868. In addition, the documents at issue in *Coastal States* were memoranda written by regional counsel to third-party auditors that contained agency interpretations of its own regulations. *Id.* at 858-60. By contrast, the documents at issue here consist of intra-agency e-mail communications between BPA counsel and BPA employees that reflect questions posed by attorneys to BPA staff and legal analyses in response to a dispute. This is precisely the type of communication that is protected by the attorney-client privilege.

In addition, Berryhill argues that BPA has failed to demonstrate that the communications between BPA counsel and BPA employees were intended to be confidential. (Pl.'s Reply at 3.) The Court disagrees. *In camera* review establishes that the documents were maintained internally between BPA counsel and staff, and Berryhill has not pointed to any circumstances that would suggest that BPA waived its privilege. *See Freedom of the Press Found.*, 241 F. Supp. 3d at 1002 (rejecting the plaintiff's arguments that attorney-client privilege had been waived when the court

---

[5] In his reply brief, Berryhill compares Talbott's legal advice to "the advice described in *Vaughn II* where the court affirmed the district court's decision that DOE had failed to carry its burden of establishing that documents should be granted protection under the attorney client privilege." (Pl.'s Reply at 4.) However, it appears that Berryhill is describing the *Coastal States* opinion, and not *Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) ("*Vaughn II*"), as the DOE was the defendant in *Coastal States* and not in *Vaughn II*, and Berryhill quotes a passage from *Coastal States* (which includes a citation to *Vaughn II*) in support of his argument.

found that "the documents were maintained internally and Plaintiff has not pointed to circumstances that would suggest Defendant otherwise waived the privilege").

### c.    Conclusion

BPA has established that the attorney-client privilege protects from disclosure material that BPA withheld from documents 000003, 000004, 000017, 000019, 000020, and 000052.

## C.    The Administrative Procedure Act

Berryhill also alleges a claim under the APA. The APA governs judicial review of final agency actions. *See* 5 U.S.C. § 701(a). However, separate APA review is not available when other adequate remedies exist. *See* 5 U.S.C. § 703 (stating that APA review is available "[e]xcept to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law"); 5 U.S.C. § 704 (providing that agency action is subject to review under the APA "for which there is no other adequate remedy in court"). FOIA provides Berryhill with an adequate remedy for his claims here. *See Kubik v. U.S. Fed. Bureau of Prisons*, No. 10-6078, 2011 WL 2619538, at *12 (D. Or. July 1, 2011) ("I decline to consider the Kubiks' APA claim because FOIA itself provides them an adequate remedy."). Thus, because FOIA provides Berryhill with an adequate remedy, the Court also grants summary judgment in favor of BPA on the APA claim.

## CONCLUSION

For the reasons stated, the Court GRANTS BPA's Motion for Summary Judgment (ECF No. 15).

DATED this 23rd day of December, 2020.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge