IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JEROME BOYD BERRYHILL, an individual citizen, | Case No. 3:19-cv-02001-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| BONNEVILLE POWER ADMINISTRATION, United States agency, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Jerome Berryhill ("Berryhill") filed this action against the Bonneville Power Administration ("BPA"), seeking disclosure of records related to Berryhill's property under the Freedom of Information Act ("FOIA"). Before the Court is Berryhill's motion for attorney's fees. (ECF No. 27.) All parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For the reasons set forth below, the Court denies Berryhill's motion.

**BACKGROUND**

This case arises from a dispute involving a BPA easement on Berryhill's property (the "Property"). Under the terms of the easement, BPA is authorized to perform maintenance on the

PAGE 1 – OPINION AND ORDER

Property to prevent vegetation from interfering with transmission lines that pass overhead. (Decl. of FOIA Officer Candace Palen ("Palen Decl.") ¶¶ 25-26, ECF No. 16.)

On March 15, 2019, Berryhill submitted a FOIA request to BPA, seeking all BPA records related to his home address in Eugene, Oregon. (Suppl. Decl. of Candace Palen ("Palen Suppl. Decl.") ¶ 7, ECF No. 29.) On August 7, 2019, BPA produced 453 pages of records responsive to Berryhill's request, twenty-eight of which contained redactions. (Id. ¶ 8.) Later, BPA determined that six of the twenty-eight redacted pages were duplicative. (Id.)

Dissatisfied with the results of BPA's response, Berryhill filed an administrative appeal with the Department of Energy's ("DOE") Office of Hearings and Appeals on November 4, 2019. (Palen Decl. Ex. 3, at 1.) On November 21, 2019, the DOE denied the appeal, stating that the decision was "a final order of the Department of Energy for which any aggrieved party may seek judicial review pursuant to 5 U.S.C. § 552(a)(4)(B)." (Palen Decl. Ex. 3, at 4.) The DOE concluded that BPA properly withheld the redacted information under the deliberative process privilege pursuant to Exemption 5 of FOIA.[1] (Palen Decl. Ex. 3, at 4.)

On December 12, 2019, Berryhill filed this action seeking disclosure of the requested documents, alleging that BPA's failure to release the redacted portions of the twenty-eight responsive records violates FOIA. (Compl. ¶ 22.) On September 2, 2020, BPA voluntarily released seven of the original twenty-eight redacted pages to Berryhill in full. (Palen Suppl. Decl. ¶ 9; Decl. of Ann Witte ("Witte Decl.") at 3.) The seven pages consisted of five drafts of the same letter informing Berryhill that BPA intends to remove vegetation from the Property.

---

[1] FOIA's Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 includes the deliberative process privilege, the attorney-client privilege, and the attorney work-product doctrine. *See Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997).

PAGE 2 – OPINION AND ORDER

(Palen Suppl. Decl. ¶ 10.) BPA had previously mailed the final version of this letter to Berryhill on February 11, 2019. (*Id.*) The drafts contained minor differences from the final version of the letter, including different proposed dates of removal and slightly modified language. (*See* Palen Suppl. Decl. Ex. 1, at 1-10.)

On September 4, 2020, BPA filed a motion for summary judgment. (ECF No. 15.) BPA argued that it is not required to disclose the redacted documents because they are protected from disclosure under the deliberative process and attorney-client privileges pursuant to FOIA's Exemption 5.

On November 9, 2020, BPA submitted ninety-eight documents to the Court for *in camera* review, numbered BPA-000001 to BPA-000098. On December 2, 2020, Berryhill requested a discovery hearing to determine whether BPA had provided the Court with five documents that BPA claimed were duplicative of other records released to Berryhill as part of his original FOIA request. The Court reviewed the five documents and determined that they were in fact duplicative of five documents that BPA had already provided to the Court for inspection.

On December 23, 2020, the Court granted BPA's motion for summary judgment on the ground that BPA properly withheld all redacted material under either the attorney-client or deliberative process privileges. (Op. & Order, ECF No. 25.)

**LEGAL STANDARDS**

Under FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "To obtain an award of attorney fees under the FOIA, a plaintiff must demonstrate both eligibility and entitlement to the award." *Or. Nat'l Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009).

"A party is eligible for attorneys' fees if it 'substantially prevailed' in the litigation." *Hiken v. Dep't of Def.*, 836 F.3d 1037, 1043 (9th Cir. 2016) (quoting 5 U.S.C. § 552(a)(4)(E)). A party "substantially prevails" by obtaining "relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(i)(ii). The second theory of eligibility is referred to as the "catalyst theory." *First Amend. Coal. v. U.S. Dep't of Just.*, 878 F.3d 1119, 1128 (9th Cir. 2017) (explaining that the second prong "represent[s] a 'catalyst theory of recovery'; namely, as an 'alternate theory for determining the prevailing party if no relief on the merits is obtained'").

## DISCUSSION

The parties agree that Berryhill did not obtain relief through a judicial order, enforceable written agreement, or consent decree. (*See* Pl.'s Mot. at 2; Def.'s Resp. at 4.) Thus, Berryhill relies on the "catalyst theory" to demonstrate eligibility for attorney's fees. *First Amend. Coal.*, 878 F.3d at 1128; *see also* 5 U.S.C. § 552(a)(4)(E)(i)(ii).

Berryhill argues that he is eligible for attorney's fees because his filing of this lawsuit caused the government to change its position and release five previously withheld draft letters and remove redactions from five previously released documents. (Pl.'s Mot. Atty's Fees ("Pl.'s Mot.") at 2.) BPA responds that: (1) the five draft letters contained only minor changes from the final letter sent to Berryhill and therefore the release "does not rise to the level of a voluntary or unilateral change of position"; and (2) BPA did not make changes to the previously released documents except to remove a single, one-sentence redaction from document number 000025 after discovering that the sentence was identical to an unredacted sentence appearing in document number 000004. (Def.'s Resp. at 3-5.)

///

PAGE 4 – OPINION AND ORDER

### A. Applicable Law

To be eligible for attorney's fees under the catalyst theory, a party must demonstrate "a causal nexus between the litigation and the voluntary disclosure or change in position by the Government." *First Amend. Coal.*, 878 F.3d at 1128. To do so, the plaintiff must "present 'convincing evidence' that the filing of the action 'had a substantial causative effect on the delivery of the information.'" *Id.* (quoting *Church of Scientology of Cal. v. U.S. Postal Serv.*, 700 F.2d 486, 491 (9th Cir. 1983)).[2]

To determine whether the plaintiff has substantially prevailed under this theory, courts consider: (1) "when the documents were released," (2) "what actually triggered the documents' release," and (3) "whether [the plaintiff] was entitled to the documents at an earlier time." *First Amend. Coal.*, 878 F.3d at 1129 (quoting *Church of Scientology*, 700 F.2d at 492). Ultimately, "the question is whether hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 206 (D.D.C. 2016).

### B. Analysis

#### 1. Documents Released to Berryhill

As an initial matter, the parties disagree on what material BPA released to Berryhill after he filed this lawsuit. BPA claims that it removed only a single, one-sentence redaction on document number 000025 before submitting the documents to the Court for *in camera* review on

---

[2] In light of the Ninth Circuit's split decision in *First Amendment Coalition*, there is an open question as to the degree of causal connection required to determine whether a plaintiff has "substantially prevailed." See *Poulsen v. Dep't of Def.*, No. 17-cv-03531-WHO, 2019 WL 2568882, at *4 n.2 (N.D. Cal. June 21, 2019) ("There is some debate whether 'causation' is required and, if so, how much causal connection stemming from the split decision of the Ninth Circuit panel in the *First Amendment Coalition* case.").

November 9, 2020, because that sentence was not redacted on document number 000004 in its earlier production, and that it made no other changes to any of the other documents it released to Berryhill on August 7, 2019. (Def.'s Resp. at 3; Palen Suppl. Decl. ¶ 11.) Berryhill disagrees, and asserts that BPA removed redactions from seven previously released documents (Bates Nos. 000003, 000004, 000023, 000025, 000033, 000055, and 000076) at some point after Berryhill filed this action and before BPA moved for summary judgment. (Pl.'s Reply at 1-2.) As evidence, Berryhill submits copies of the original documents that BPA produced to him on August 7, 2019. (Suppl. Decl. of Anne Witte ("Witte Suppl. Decl.") Att. 2.)

After careful review of both BPA's Bates-numbered documents submitted to the Court for *in camera* inspection and Berryhill's copies of BPA's August 7, 2019 production, the Court finds that the following documents are duplicative: (1) Bates numbered documents 000003 and 000023, which correspond to original document numbers BPA-201-00620-F-171 and BPA-201-00620-F-192; (2) Bates numbered documents 000004 and 000025, which correspond to original document numbers BPA-2019-00620-F-172 and BPA-2019-00620-F-194; and (3) Bates numbered documents 000033, 000055, and 000076, which correspond to BPA-2019-00620-F-360, BPA-201-00620-F-404, and BPA-2019-00620-F-425. Thus, only three of the cited seven pages contain unique redactions.

In addition, the Court finds that the redactions contained in these three pages originally released to Berryhill do not appear on the corresponding Bates-numbered documents submitted to the Court for *in camera* review.[3] Accordingly, the Court concludes that BPA removed

---

[3] In Berryhill's opposition to BPA's motion for summary judgment, he asserted that BPA produced, upon request, copies of its ninety-one Bates-numbered documents included in its *Vaughn* index to Berryhill, and that "all or parts of previously redacted material from five originally produced BPA [documents] appears unredacted in the *Vaughn* index copies." (Pl.'s Opp'n Mot. Summ. J. at 2.) Thus, it appears that BPA may have inadvertently removed

PAGE 6 – OPINION AND ORDER

redactions from three unique pages at some point after its August 7, 2019, production to Berryhill (to include document 000025, which BPA acknowledges). The Court now turns to the eligibility factors outlined in *First Amendment Coalition*.

### 2. When the Documents Were Released

To determine whether a causal nexus exists between the litigation and the voluntary disclosure of information, "*when* information is delivered may be as important as *what* information is delivered." *First Amend. Coal.*, 878 F.3d at 1129 (citing *Church of Scientology*, 700 F.2d at 490). In *First Amendment Coalition*, the plaintiff sought the release of memoranda concerning the authority of the Central Intelligence Agency to use drone strikes. *Id.* at 1121. The plaintiff filed a FOIA action in federal court for the release of the memoranda. *Id.* at 1121-22. After the case was pending for approximately two and a half years, the government released a responsive memorandum to the plaintiff. *Id.* at 1122. The Ninth Circuit found that this factor weighed in favor of a fee award because the government had displayed "abject resistance" throughout the entire litigation and did not produce the requested documents until two and a half years after the plaintiff initiated the lawsuit. *Id.* at 1129-30.

Berryhill filed this action in December 2019, concerning his March 2019 FOIA request. In September 2020, BPA released seven pages of previously withheld draft letters and unredacted material from seven pages (three, if removing duplicates). BPA did not release the documents until nine months after Berryhill initiated his litigation. Therefore, the timing factor weighs in favor of a fee award.

///

///

---

redactions from the documents at some point prior to producing the *Vaughn* index copies to Berryhill.

### 3. What Actually Triggered the Documents' Release

Berryhill contends that the filing of this case prompted disclosure of the redacted documents. (Pl.'s Mot. at 2.) "[W]here an agency voluntarily changes its position, the plaintiff's complaint must have been the 'catalyst' for the change[.]" *Kopp v. U.S. Secret Serv.*, 18-CV-04913-JCS, 2019 WL 2327933, at *3 (N.D. Cal. May 31, 2019) (quoting *First Amend. Coal.*, 878 F.3d at 1129). "[T]he plaintiff has the burden of showing 'that it is more probable than not that the government would not have performed the desired act absent the lawsuit.'" *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 97 (D.C. Cir. 2020) (citation omitted).

On the one hand, "it is challenging for a plaintiff in a FOIA proceeding to present evidence as to why the Government elected to disclose the information." *Schoenberg v. Fed. Bureau of Investigation*, No. LA CV18-01738 JAK (AGRx), 2020 WL 4937813, at *5 (C.D. Cal. May 8, 2020). As a result, "it is difficult to know whether it was due to the pending FOIA action or for other reasons." *Id.*

On the other hand, "the mere fact that information sought was not released until after the lawsuit was instituted is insufficient to establish that a complainant has 'substantially prevailed.'" *First Amend. Coal.*, 878 F.3d at 1128; *see also Grand Canyon Tr.*, 947 F.3d at 97 ("[The mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation."). Indeed, "[t]here may be a host of reasons why the Government has voluntarily released information after the filing of a FOIA lawsuit." *First Amend. Coal.*, 878 F.3d at 1128.

The Court finds that Berryhill has failed to establish that, but for this lawsuit, BPA would not have released the unredacted material. Berryhill has not submitted any evidence to support this assertion other than the fact that BPA released the material after Berryhill filed this action. On its own, this fact is insufficient to establish that a plaintiff's lawsuit caused the agency to

PAGE 8 – OPINION AND ORDER

disclose information. *See Rich v. U.S. Citizenship & Immigr. Servs.*, No. C20-0813JLR, 2020 WL 7490373, at *3 (W.D. Wash. Dec. 21, 2020) ("Ms. Rich's only argument for eligibility is a temporal one. She contends that she had not received the requested documents before the filing of this suit, and the government subsequently released the records. But as *First Amendment Coalition* cautioned, 'the mere fact that information sought was not released until after the lawsuit was instituted is insufficient to establish that a complainant has substantially prevailed.' Without more, Ms. Rich has not shown that she is eligible for attorney fees.")

Indeed, Berryhill appears to acknowledge that BPA may have removed the redactions from the emails in response to Berryhill's administrative appeal of BPA's original production of documents, i.e., prior to this litigation, and that BPA may have removed the redactions unintentionally. (*See* Pl.'s Reply at 1, noting that "[s]omehow, either deliberately or by misuse of redaction-producing software, Defendant BPA removed redactions from some documents as it reduced the number from 453 to 91 to prepare for the administrative appeal."). Absent additional evidence, Berryhill has failed to establish that his lawsuit triggered BPA to release the previously withheld information. *Conservation Force*, 160 F. Supp. 3d at 206 ("[T]he question is whether hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief."); *see also Dorsen v. U.S. Sec. & Exch. Comm'n*, 15 F. Supp. 3d 112, 118-19 (D.D.C. 2014) (analyzing this factor and finding that "[c]ausation requires more than correlation" and "[s]omething more than *post hoc, ergo propter hoc* must be shown") (citation omitted).

Accordingly, the causation factor weighs in favor of denying Berryhill's fee motion.

///

///

PAGE 9 – OPINION AND ORDER

### 4. Whether Berryhill Was Entitled to the Information at an Earlier Time

Finally, the Court considers "whether [the plaintiff] was entitled to the documents at an earlier time." *First Amend. Coal.*, 878 F.3d at 1129 (quoting *Church of Scientology*, 700 F.2d at 492). "[T]he fact that [an agency's] initial nondisclosure decision rested on a solid legal basis creates a safe harbor against the assessment of attorney fees." *Brayton v. Off. U.S. Trade Rep.*, 641 F.3d 521, 528 (D.C. Cir. 2011).

In *Brayton*, the government voluntarily declassified a trade agreement at issue in a FOIA suit after the parties had filed motions for summary judgment, apparently because European parties to the agreement agreed to its disclosure. *Id.* at 523-24. The D.C. Circuit affirmed the district court's decision to deny fees because the government's initial position–that the classified document was exempt from disclosure–was correct on the merits and, therefore, the plaintiff was not entitled to fees.[4] *Id.* at 528; *see also Poulsen*, 2019 WL 2568882, at *5-6 (finding that the plaintiff was not entitled to documents at an earlier time than the agency's voluntary release

---

[4] In *Brayton*, the D.C. Circuit analyzed the merits of the agency's nondisclosure under the second step of the attorney's fees analysis, i.e., whether the plaintiff was *entitled* to fees. *Brayton*, 641 F.3d at 524. Other cases from that circuit make clear that whether the agency's decision to withhold documents was correct as a matter of law only affects the plaintiff's entitlement to an award, and not their eligibility for that award. *See, e.g.*, *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 87 F. Supp. 3d 223, 230 (D.D.C. 2015) ("[E]ven if the defendant were correct and . . . did show that the agency was correct to withhold [the material] as a matter of law, such a finding would not affect the plaintiff's eligibility for a fee award; it would affect the plaintiff's entitlement for such an award."); *see also Davy v. C.I.A.*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) ("If the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." (quoting *Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993) ("[T]here can be no doubt that a party is not entitled to fees if the Government's legal basis for withholding requested records is correct."))). In contrast, the Ninth Circuit's test for eligibility requires courts to consider "whether [the plaintiff] was entitled to the documents at an earlier time." *First Amend. Coal.*, 878 F.3d at 1129 (quoting *Church of Scientology*, 700 F.2d at 492). Therefore, consideration of the reasons for the agency's nondisclosure is relevant to the eligibility analysis here.

because the government's asserted reasons for nondisclosure "were sustained in full" by the Court); *Kopp*, 2019 WL 2327933, at *5 ("The Court concludes that Kopp is eligible for attorneys' fees with respect to his first two requests but not with respect to his third request, because although the Secret Service did not produce any documents until Kopp filed this action, Kopp was only 'entitled to the documents at an earlier time' with respect to the first two requests." (quoting *First Amend. Coal.*, 878 F.3d at 1129)).

To determine whether Berryhill was entitled to the information at an earlier time, the Court will address the merits of the agency's nondisclosure as it pertains to the five draft letters and the unredacted emails.

### a. Deliberative Process Privilege

BPA asserted the deliberative process privilege as a basis for withholding documents from Berryhill. In its denial of Berryhill's FOIA appeal, the DOE also found that BPA properly withheld the draft letters under the deliberative process privilege. (Palen Decl. Ex. 3, at 4.)

The deliberative process privilege "shields certain intra-agency communications from disclosure to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009). In other words, agencies are permitted to withhold documents that reflect "the decision making processes of government agencies." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (citation omitted).

To qualify under the deliberative process privilege, information must be both "predecisional" and "deliberative." *Lahr*, 569 F.3d at 979. A document is predecisional if it is "prepared in order to assist an agency decision-maker in arriving at his decision." *Sierra Club Inc. v. U.S. Fish & Wildlife Serv.*, 925 F.3d 1000, 1012 (9th Cir. 2019) (quoting *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992)). This may include

PAGE 11 – OPINION AND ORDER

"recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* A document is deliberative if it reflects the "give-and-take of the consultative process" and includes material that would "inaccurately reflect or prematurely disclose the views of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The key inquiry is "whether the disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Assembly of State of Cal.*, 968 F.2d at 921.

          b.      Analysis

                1)      **Redacted E-mails**

                      a)      **Bates Nos. 000003/000023**

The following excerpt is from an e-mail that a BPA attorney sent to four other employees, and it appears redacted from the document BPA released on August 7, 2019, but unredacted on Bates No. 000023 produced to Berryhill in support of BPA's *Vaughn* index: "Just a few questions to make sure there are no other issues that may cause problems for us."[5] (Palen Suppl. Decl. Ex. 2, at 3.)

The Court finds that a BPA employee prepared this e-mail for the specific purpose of assisting the agency in its decision to remove vegetation from BPA's easement, and therefore the record is predecisional. This portion of the e-mail is also deliberative. The employee requests clarification on issues before the agency, and the subject matter represents the give-and-take of

---

      [5] Although Bates numbered documents 000003 and 000023 are duplicative, this sentence remains redacted in document number 000003. (Palen Decl. Ex. 2, at 1.)

PAGE 12 – OPINION AND ORDER

the agency's internal deliberations. Accordingly, this information is subject to the deliberative process privilege and Berryhill was not entitled to it at an earlier time.

### b) Bates Nos. 000004/000025

The next excerpt was an email that the BPA attorney sent to BPA employees in the same e-mail chain discussed above: "FYI- I think this is familiar to Hala and I'm not sure if Annette has had occasion to weigh in. Including you both in case you see issues in the plan described below – it sounds reasonable to me but I'm not as on top of the facts." (Palen Suppl. Decl. Ex. 2, at 2.) BPA originally redacted this portion of the e-mail as it appeared on Bates number 000025, but later released an unredacted version of 000025 because it had previously produced an unredacted version of the same email at Bates number 000004. (*Id.*; *id.* at 4.)

The deliberative process privilege also applies to this excerpt. Counsel prepared this document to assist BPA staff on its plan for vegetation removal before BPA finalized that plan. In addition, some of the redacted material reflects the personal opinions of a BPA employee rather than the policy of the agency. *See Coastal States*, 617 F.2d at 866 (holding that the deliberative process privilege covers "subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"). Therefore, the document is both predecisional and deliberative, and thus falls squarely within the deliberative process privilege.

### c) Bates Nos. 000033, 000055, and 000076

A BPA employee sent the following e-mail on February 15, 2019, four days before BPA removed vegetation from the Property. BPA originally redacted this e-mail, but it later appears fully unredacted on Bates numbers 000033 and 000076:[6]

---

[6] All but one sentence of this e-mail appears redacted on document number 000055. (Palen Suppl. Decl. Ex. 2, at 6.)

PAGE 13 – OPINION AND ORDER

> I believe we have responded way too many times and have gotten nowhere. This is what this owner has always done to prevent us from performing our obligations and a way for him to drag this as long as possible.
>
> In my opinion, both Sandra and I need 100% support from BPA security and law enforcement, which I don't believe we are getting. It seems we are setting a precedent for the public to mirror this situation and keep BPA from operating.
>
> My apologies if I may sound frustrated . . . but the work needs to happen.

(Palen Decl. Ex. 2, at 5, 7.) The Court finds that the e-mail is predecisional, as it contributes to the agency's process of arriving at a decision as to safety precautions in preparation for the vegetation removal. *See Riverkeeper v. U.S. Army Corps of Eng'rs*, 38 F. Supp. 3d 1207, 1219 (D. Or. 2014) (noting that a document is predecisional when it "contributes in some meaningful sense to the process of arriving at [] a decision"). In addition, the e-mail expresses subjective opinions and personal views of a BPA employee and is therefore deliberative. Accordingly, BPA properly withheld the documents under the deliberative process privilege.

### 2)     Draft Letters

On September 2, 2020, BPA voluntarily released five drafts of the same letter informing Berryhill that BPA intends to remove vegetation from the Property. (Palen Suppl. Decl. Ex. 1, at 2.) The first two versions of the letter (Bates Nos. 000092-93 and Nos. 000094-95) are identical, except for the proposed date of removal in the third paragraph. (*Compare* Palen Suppl. Decl. Ex. 1, at 4, stating that "[t]he planned vegetation removal will be on Tuesday, February 28, 2019[,]" *with id.* at 6, "The planned vegetation removal will be on Tuesday, February 19, 2019"). The third and fourth letters (Bates Nos. 000096 and 97) each use slightly different language, and the fifth letter (Bates No. 000098) is an identical copy of the fourth letter. (Palen Suppl. Decl. Ex. 1, at 8-10.) In its denial of Berryhill's FOIA appeal, the DOE found that the draft letters were properly withheld under the deliberative process privilege. (Palen Decl. Ex. 3, at 4.) The Court agrees.

PAGE 14 – OPINION AND ORDER

As explained above, a predecisional document may include "recommendations, *draft documents*, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Sierra Club*, 925 F.3d at 1012 (emphasis added). The parties do not dispute that BPA prepared the five draft letters before it sent its final letter to Berryhill on February 11, 2019. Thus, the Court finds that the draft letters are predecisional.

The draft letters are also deliberative. Although nearly identical, a comparison between the drafts and the final letter reveals part of BPA's deliberative process, including: (1) when the vegetation removal would take place, (2) agency judgment regarding what information should be included in the letter, and (3) how the letter should be worded. Such internal considerations are the type of information protected by the deliberative process privilege. *See Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1049 (D.C. Cir. 1982) (finding that a draft was protected from disclosure under the deliberative process privilege and noting that "a simple comparison between the pages sought and the official document would reveal what material supplied by subordinates senior officials judged appropriate for the [final draft] and what material they judged inappropriate" and "Exemption (b)(5) exists to prevent such disrobing of an agency decision-maker's judgment"); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1119 (9th Cir. 1988) (finding documents exempt from disclosure, including a draft environmental impact statement, because disclosure would reveal the agency's evaluation of facts it had assembled); *Color of Change v. U.S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 453-54 (S.D.N.Y. 2018) (holding that drafts of a proposed intelligence assessment were protected by the deliberative process privilege because "[r]elease would reveal the give-and-take through which agencies ultimately reach their positions" and would display [the agency's] internal considerations on

whether to issue the assessment and what form it should take"); *ViroPharma Inc. v. Dep't of Health & Hum. Servs.*, 839 F. Supp. 2d 184, 193 (D.D.C. 2012) (holding that the FDA properly withheld various draft documents because "[t]he choice of what factual material and prior final agency opinions to include or remove during the drafting process is itself often part of the deliberative process, and thus is properly exempt under Exemption 5"); *see also Amnesty Int'l USA v. Cent. Intel. Agency*, 728 F. Supp. 2d 479, 518 (S.D.N.Y. 2010) ("It is well-settled that draft documents, by their very nature, are typically predecisional and deliberative. They reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation by their authors or by their superiors." (quoting *Exxon Corp. v. U.S. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983)). Accordingly, the draft letters fall under the deliberative process privilege.

### c. Conclusion

The Court finds that the final factor weighs in favor of denying Berryhill's fee motion, as the redacted material that BPA released was protected from disclosure under the deliberative process privilege and therefore Berryhill was not entitled to this information at an earlier time. On balance, the relevant factors support a finding that Berryhill did not substantially prevail in this litigation. Rather, BPA disclosed a few drafts of a letter it had already sent to Berryhill, and disclosed a few excerpts from emails, all of which it could have continued to withhold. Accordingly, the Court concludes that Berryhill is not eligible for an award of attorney's fees and costs.[7]

---

[7] In light of the Court's determination that Berryhill is not eligible for a fee award, the Court does not address whether Berryhill is entitled to the award. *See Or. Nat'l Desert Ass'n*, 572 F.3d at 614 ("To obtain an award of attorney fees under the FOIA, a plaintiff must demonstrate both eligibility and entitlement to the award.").

## CONCLUSION

For the reasons stated, the Court DENIES Berryhill's Motion for Attorney's Fees (ECF No. 27).

DATED this 5th day of March, 2021.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge